Novoselsky v. Brown, Ms. Baker May it please the Court, my name is Sussvan Baker and I represent defendants Dorothy Brown and Cook County. Your Honors, we're here because Dorothy Brown, as the Clerk of the Circuit Court, is entitled to immunities and privileges, which include... Could you speak up please? I can't hear you. ...the litigation process. Your Honor, first I'd like to turn our attention to the qualified immunity that she's asserting under the First Amendment retaliation claim. And specifically, I'm asking to look first at the clearly established segment of that analysis. In this case, it is a de novo review and the plaintiff bears the burden to demonstrate to the court that a court has upheld the purported right in a case factual similar to the one under review. The plaintiff has not provided any case law to this court which would support his position that what Dorothy Brown has done is clearly prohibited or a violation of his constitutional rights. Specifically, Your Honor, what the facts reveal, the undisputed facts reveal, is that from 2004 up until the time that this case was filed in 2011, plaintiff David Novoselsky, an attorney and a very experienced attorney, has filed 19 actions against Clerk Brown's office. Most of them are very similar. They particularly involve whether or not she is allowed to collect filing fees and other issues related to whether or not she has mismanaged her office. In that case, Your Honor, Mr. Novoselsky has never shown that there's any case law that showed that when an elected official, a reasonable person in her position, has filed an ARDC complaint challenging that these lawsuits were frivolous. Let us not forget that these lawsuits, none of them he ever won, none of them went forward beyond the discovery point. Most of the time they were dismissed on motions to dismiss or they were voluntarily dismissed. They were frivolous. Even under the standard that this court found under the Conrad case, where the plaintiff was determined to have found to abuse the legal process by filing eight lawsuits, none of which she prevailed upon but three in which she settled, was abuse of the legal process by incessant filings and frivolous lawsuits. The facts in this case do show that under those circumstances, the actions that she took, the communications which make up the defamation, which make up the First Amendment retaliation claims, are not unreasonable, do not violate the plaintiff's civil rights, his First Amendment rights. Specifically, he's saying that he has a First Amendment right to file grievances. And certainly he does have the right to do that. He doesn't have the right, it's not a First Amendment right, to file grievances on behalf of his clients. Can I ask you about that point in your brief? In both your opening brief and your reply brief, you rely on the case of Mezeboff v. Allen. Do you recall that? Yes, Your Honor. And you said that in both of those briefs that the Seventh Circuit had found that an attorney retains no First Amendment rights on his own behalf when representing a client in judicial proceedings. That would seem like pretty powerful authority. It's not the Seventh Circuit. It's the Sixth Circuit.  That's rather elementary when you're practicing in the Seventh Circuit. Do you have any idea how that happened? And did you read Judge Moore's rather persuasive dissent? Your Honor, I'm sure that I've read the dissent and I'm sure that... And you never noticed that this was not a judge on the Seventh Circuit or that the case was from the Sixth? Your Honor, I apologize. I did not notice that. Okay. With respect to the First Amendment substantive right to be free from retaliation by government officials, Counsel, could you address our case law that says, for example, prisoners and public employees cannot be targeted by retaliation for exercising their First Amendment rights? Yes, Your Honor. I think that's a very different set of circumstances in what's going on here. Here, this is a collateral immunity issue. And the factual... This is a collateral appeal, Your Honor. And so we're looking at abstract questions of law. Collateral appeal? What's a collateral appeal? Do you mean an interlocutory appeal? It is an interlocutory appeal based upon immunity, Your Honor. And so we're saying that these issues are technically... have been considered to be final because of the immunity issues. That's not really responsive to my question. We've got a pretty extensive body of law concerning the powers and limits on powers of public officials to retaliate against people who are subject to their powers because those people have exercised their First Amendment rights. And I was wondering if you could address that. You just said they're different, but I was wondering if you could be more specific. Yes, Your Honor, I can. The question that the court will look at when applying an immunity issue for retaliation is first whether or not the plaintiff has asserted a First Amendment right. The second is whether or not they've clearly established a right. In this particular case, the plaintiff has not established a clear violation of their First Amendment right. And the standard is whether or not when looking at whether or not the plaintiff can provide a case that is factual or similar to the one under review that the alleged misconduct constitutes an obvious violation of the constitutional right. And plaintiff never does that. Plaintiff can only try to attempt to distinguish our cases. I thought your argument was immunity. It is immunity, Your Honor. That's very different. With respect to immunity, the second problem is... What's your strongest? You have a bunch of immunity arguments, don't you? I do. Well, what's the strongest? Well, with respect to the state defamation claims, it is the absolute immunities, Your Honor. That is specifically she has immunities with respect to actions or communications taken in her official capacity and also portions of the communications, especially the Jackson communications or communications that were made during the course of judicial proceedings. Those are absolute immunities. Could you address the case of In re Segal with respect to Ms. Brown's direct communications with Reverend Jackson? And in particular, that seems to be very clear, imposing sanctions on an attorney who was also himself a party in the case, communicating directly with the opposing party who was represented by counsel. Is there any Illinois case law that limits Segal so as to exclude its application from public officials such as Ms. Brown? Your Honor, Segal is distinguishable because... Could you answer my question and then tell me why it's distinguishable? There are no cases that I know. Thank you. But I will say that Segal is distinguishable because in Segal, the lawyer was representing himself pro se. In this particular case, Dorothy Brown cannot, Dorothy Brown's office cannot represent herself. She is an attorney. She has a license, but she acts as the clerk of the circuit court. Pursuant to Illinois law, only the state's attorney may represent Dorothy Brown in any kind of litigation. And therefore, when she is acting... Have the Illinois courts accepted that distinction that you're drawing or are you asking us to draw it for the first time? I am not aware of any courts that have accepted that distinction. You made that point. On the ARDC issue, do you agree that the press release is not protected by the Supreme Court rule? I agree. Okay. With respect to the absolute immunity, which seems to me to be your strongest, under Blair against Walker and Geick against Kay, Geick seems to have extended the Blair case to all public officials, if I understand it correctly, granting absolute immunity from defamation for deliberately false and malicious attacks on private citizens, correct? That's correct. Would that also extend, do you think, to public disclosure of confidential files, let's say disclosing a former employee's medical records? I don't believe so. I think that there are other statutes which would affect that analysis. But is it correct that a private citizen who criticizes a public official is entitled only to the limited immunity, the so-called actual malice standard, of New York Times v. Sullivan, so that deliberately false statements about the public official could subject that person to defamation liability? I think the case law requires a finding of malice or threat. I don't think it's simply just malice. Malice includes deliberate or reckless falsity under New York Times v. Sullivan, correct? That's correct. Okay. So if I've got this straight, under Illinois law at this point, if we've got a candidate who's running against an incumbent, the incumbent can respond to criticisms with deliberately false and malicious statements about the challenger and is entitled to absolute immunity, correct? That's your position, correct? No, that's not my position. What I'm saying is that she has absolute immunity if what she is trying to do is express her own opinion, when she's trying to exercise her own First Amendment right. As long as it's reasonably related to her official duties, correct? That is correct. You understand that very broadly, right? Reasonably related. Yes, I understand that. Okay. So if the incumbent is responding to criticisms by the challenger, she's entitled to make deliberately false and malicious statements as long as they are, quote, reasonably related to her official duties, and she's absolutely immune, correct? That's correct, Your Honor. While the challenger is, under your reading of Illinois law, at least required not to be deliberately or recklessly false, correct? Your Honor, yes. Have the Illinois courts addressed that kind of asymmetry in the way these immunities work? Your Honor, the dispositive inquiry that the Illinois Supreme Court determined in Blair is whether or not those actions, the communications related to this. Your answer is no, they have not. Not that I'm aware of. Thank you. I thought this absolute immunity from defamatory statements was limited to executive officers. Yes, under Blair it is, Your Honor. But Brown is an executive. I'm sorry? Brown is not an executive official. Brown is an elected official. She is an executive for the Office of the Cook County Circuit Court. Is she a policymaker for the county? She is. She is a policymaker for the Office of the Circuit Court, the clerk. Does this bring her within the Illinois concept of an executive official? Yes, it would. Did you discuss that in your brief? Your Honor, I had highlighted just as. . . Well, it's a yes or no question. Yes. You did discuss it. I discussed it by identifying the statutory provision under which she is elected and under which she is required to manage and administrate her office. But have you looked at how the Illinois courts define executive officials? Your Honor, under Blair it defines. . . Yes or no? Yes. And how are they defined? Is there a statutory definition or judicial or what?  Or is there the constitutional provision which discusses those responsibilities? Your Honor, I'd like to reserve my time if that's. . . Okay. Thank you. Mr. Teague? May it please the Court? Joseph Teague for the plaintiff, Mr. Nowoselski. This is a very unusual factual setting, as Your Honors can see. This was not a response by Dorothy Brown to a question from the public as to Mr. Nowoselski. This was a four- or five-month drafting process to the ARDC accompanied by a press release to announce that Dorothy Brown wished to bring the disciplinary system upon Mr. Nowoselski because Mr. Nowoselski, as a private citizen, attended a public press conference, was allowed to ask questions, and asked questions that made a candidate for a different office, Office of Cook County President, uncomfortable because the press conference did not go as she had envisioned it. The triggering event that gave rise to the letter to the ARDC had nothing to do with the clerk as clerk. It had to do with the clerk as a candidate trying to run for a different office and holding a press conference at a public place, and then she asked questions of my client, questions that she stated under deposition she would not have refused to answer if it was from a member of the press. The member of the press she described as being surprised to find out that my client was a private citizen. This was not somebody who conducted himself in a manner that was inappropriate. But the real driver of this lawsuit was what happened a year later when the ARDC had told Dorothy Brown that they were not going to pursue claims against my client because, in fact, he did not have a demonstrated history of frivolous and baseless lawsuits. She went to my client's client within a day of having received a new complaint, and she went to that client and she said, Do you realize that your lawyer is a racist? And your lawyer is putting you, one of the icons of the American Civil Rights Movement, to use for his agenda, which is racially tinged to embarrass the clerk as the first African-American clerk of the Circuit Court of Cook County. She didn't lock him out of the courtroom. She took away his plaintiff and effectively took away his standing argument, his strongest standing argument, that had been the bugaboo for years of advocacy litigation that my client had been trying to bring to address a matter of public concern. That is the way the clerk is managing and accounting for the funds that are received from litigants on a daily basis in the Circuit Court of Cook County. In 2011, my client was brought to a case by a former judge who retired from the bench because he could not get relief within his job to the chief judge to force the Circuit Court clerk to receive and implement a peer jury program intended to help juvenile offenders, who are non-violent offenders, avoid the consequences and risk of the juvenile justice system by sitting down with mediators working out their disputes. Wait a second. Brown asserts a number of immunity defenses. You don't really discuss them in your brief. Well, sir, she addresses 755 as an immunity for defamation and she has conceded during oral argument that we are talking about the press release for which there is no immunity. Talking about what? The press release of the ARDC letter is separate from the ARDC letter itself and that repeats the defamatory conduct. She addresses the judicial proceedings privilege and we have responded to that in two levels. First of all, she never had a right to contact Mr. Jackson, Reverend Jackson, at all. What about the absolute immunity from defamation when you're performing your official duties? Sir, the letter from Dorothy Brown to the ARDC was not an official duty. It was an act that she undertook on her own volition. Was it reasonably related to her official duties? No, sir, it was not because she was complaining about how my client had acted in regard to her efforts for another job. It had nothing to do with... The press conference had nothing to do... You're talking about the motive for the letter rather than the content. The content talked about litigation with her office, right? It mentioned litigation with her office as well. That was virtually all of it, wasn't it? No, sir, it started with and ended with the press conference and then there was a long discussion and on the ninth draft of the presentation of the discussion, the concept of racism was injected as a motivating factor and the author and Brown both acknowledged they had no basis to believe that. They had no facts in front of them to suggest that. But the press release was an announcement by the clerk that she had asked the disciplinary system to do something else. It had nothing to do with saving taxpayers' money because there were no lawsuits pending against the clerk at the time. There was no threat to the taxpayers' money from past lawsuits that hadn't been dismissed. Let me ask you, if I could, Mr. Tye, what do you think is the strongest part of your case with respect to it being totally unrelated to Ms. Brown's official duties? I think the strongest part of it is, Your Honor, is that the gist and the impetus to the ARDC letter was the press conference. That's the motive as opposed to the content. Well, I believe they're both, and I think this is a letter that has some reference to past lawsuits, but I do not believe that the fact that there were past lawsuits has anything to do with her ongoing duties. And then I think the... Then could I ask you on the question of your First Amendment claim? Yes, sir. I went back looking for some response on the qualified immunity defense. Some case law, something to meet your burden of showing that this would qualify, and I didn't see anything. In the opening brief by the defendants, they quote from Dorothy Brown's statement in 2010 that she recognizes the right of people to bring good faith claims in the court system. She acknowledged, and with respect to Operation Push and Jesse Jackson... Could you address this in the terms that the courts have established, in terms of case law that would show that Ms. Brown should have recognized that this conduct was unconstitutional? I took her statement as an admission of an awareness that the Constitution protects the right of litigants to bring good faith meritorious claims to court, and then in violation of her restrictions under Rule 4.2, binding upon her with the force of law, whether or not she is also a public official. She interfered with and persuaded my client's client to walk away from a meritorious lawsuit and impeded my client's ability, on behalf of the issue he was trying to present, to obtain standing, to obtain the relief to which he was entitled. I think I understand your objection there. Siegel involved the private individual, right? Yes, sir. I guess I'd like to raise with you the question whether it should extend to public officials, since apparently the Illinois courts haven't addressed this yet. I want you to consider, for example, the possibility of a county clerk who's a lawyer, who's being sued for a marriage license, by a same-sex couple, for example. Yes, sir. The couple comes in to talk to her. Can she talk to them, if they are represented by counsel? If they come to the clerk to talk to the clerk about the merits of the case, she may not. She should get authority from their counsel to conduct that conversation because it relates to the protection of rights. So that public official cannot respond directly to an inquiry from citizens she's supposed to serve. No, sir. If she is aware that those citizens are represented by counsel with respect to the topic, then the Verdoliak case, Your Honor, does address the applicability of the rules of professional conduct on public officials and also has held that the rules of professional conduct have the force of law. So if a person comes to a clerk on Your Honor's hypothetical and says, I have a question, and the clerk is unaware of the fact that that person is represented by counsel on the matter, there is not going to be a violation of Rule 4.2. If the person comes and they have a lawyer and the clerk says, let me try to talk you out of your position in the lawsuit, that's where Rule 4.2 comes into place. And that is what happened here. It's debated whether the contact between Dorothy Brown, I should say, we do not believe that the conversation between Dorothy Brown and Reverend Jackson was initiated by Reverend Jackson, but even if it was, Rule 4.2 is there to protect Reverend Jackson from an uninformed judgment that he ought to talk to a lawyer about the controversy. And we had it clear that within 48, 72 hours of the lawsuit, it was dropped. Are you saying that Novoselsky never criticized Brown's performance of her official duties? No, sir, I am not saying that at all. He has been quite vocal. Well, when he criticizes her performance of her official duties, can't she hit back? And doesn't she have an immunity from a defamation suit if she hits back very hard? If she is criticized by Mr. Novoselsky, she may respond to Mr. Novoselsky and as Mr. Novoselsky bears a risk of defamation, she bears a risk of defamation. Well, what about her immunity? She is not immune from calling somebody a racist when it has nothing to do with any of her job. No, no. Look, you're changing my question. I'm sorry, Your Honor. You admit that Novoselsky criticized her performance of her official duties. Yes. Even though he criticized a lot of other stuff also. Yes. Now, doesn't she have immunity from a defamation suit when she is responding to criticisms of her performance of her official duties? If she were responding and it relates to her official duties, she would have a basis to assert an immunity. Well, Novoselsky, you admit, he criticized her performance of her official duties and she did respond verbally and weren't those verbal responses protected by her immunity. The verbal responses mean her statements to Reverend Jackson? I'm sorry, Your Honor. Her statement to the ARDC was written. You admitted you admitted that your client criticized her among other things for her performance of her official duties. Yes, sir. Now, wasn't she didn't she have immunity if she responded to those criticisms? If she were responding to the criticisms, yes. That's what I'm saying. I'm sorry, Your Honor. Now, is there no situation is there nothing covered by this case in which she was responding to the criticisms of her performance of her official duties? I think when she contacts Reverend Jackson, we cannot view that as a response to her criticism of her official duties because of Rule 4.2. She just could not have had that conversation without Mr. Novoselsky's consent. She acted at her peril with that. She gave up her immunity because she did not act consistent with her public duties to have authority under the law of Illinois binding upon her as an attorney and the force of law that she must have the consent of the opponent's counsel in order to initiate or contain, have a conversation. So her conversations and communications to Reverend Jackson were not at all within the scope of her official duties. Why are you focusing on Jackson? Because, Your Honor, with respect to Were there no other criticisms that Novoselsky made of her performance of her official duties? There were, but this lawsuit arises out of her communications to Reverend Jackson. That's what gave rise to this lawsuit. That's all that's involved in the lawsuit? He has a claim for defamation for the June 2010 letter, but the event that precipitated this lawsuit. But precipitation doesn't matter. The question is what issues are embraced by the suit. Right, and as to... That's not how it started. But as to the Jackson event, which stands... Why do you keep focusing on that? Because, Your Honor, I need at least one. Don't interrupt me. I'm sorry. I'm sorry, Your Honor. Didn't your client criticize her for other things, not connected to Jackson? Yes. He did. Well, wasn't she permitted to respond to those and be protected by her immunity? With respect to the official duties, yes. But my argument is that she had two acts prior to the lawsuit being filed. One of which, and only one of which, I need to go forward. The one with Jackson, which is not entailed with questions of whether the press release blends into the ARDC letter. It's just an initiated contact with a man's client. Whether there is any scope of protection that the law gives for that behavior. And my position is there is not and there should not be. Because it's just not right. Here's somebody coming to court to bring an action that needs to be addressed and they take away his plaintiff. They might as well just put a padlock on the door. If I could ask one question to follow up quickly on this unfortunate reliance by defendants on the Sixth Circuit Mezeboff case. Yes, Your Honor. The district judge ruled in your client's favor, so he never really had to address this problem. If the issue were to go back to the district court, is it fair to say that Mr. Nowoselski, or would you argue and allege that Mr. Nowoselski is carrying on something of a campaign with a number of clients, on behalf of a number of clients, on an issue of public interest here? He has been. Yes. We actually get into some pretty interesting case law on that question that goes back, for example, to Thurgood Marshall's campaign through the NAACP Legal Education Defense Fund and so on, is recognizing whether he had First Amendment rights, for example, along with other staff members, to bring those cases. But would you be in a position to allege something comparable if for quite different causes? With respect to the prior to the 2011 lawsuit, he was not acting on behalf of a recognized organization. Not an organization. Like-minded people. Yes, but that becomes somewhat more problematic because he's not acting on behalf of someone who's recognized as for the associational standing, if you will, to come in and speak on behalf of the underrepresented constituents. It's informal. It is informal, and that's going to get caught into issues of fact. That is his motivation, and that's how we ended up here. I see that I'm out of time. I thank the panel very much for its attention. Okay, thank you very much, Mr. Teague. Ms. Baker? Thank you, Your Honors. First, with respect to the New York Times malice standard, Your Honor, the reason why it would allow the clerk to make malicious statements is because she would be then entitled, because she's talking about the operations of her office and explaining the operations of her office. That has nothing to do with the New York Times v. Sullivan standard. That's Illinois law, correct? I guess what I'm trying to say, I'm trying to make the bridge there by saying that with respect to the issue of malice, why New York Times requires malice for a public official is because when you're and then I'll connect it to Illinois law, that is the requirement or the desirability that public officials speak clearly and freely and strongly to their constituency. And therefore, that is the reason why there is a little bit of excuse for potential malice. I would also note that in the Geick case, Your Honor, the standard is that the only consideration is whether or not the statements were reasonably made in the course of the official duties. There is no qualification. Briefly, I also want to talk about the Jackson communications, this concern about interfering with Mr. Novoselsky's client relationship with the Reverend Jackson. That's not a First Amendment right. Dorothy Brown cannot possibly be acting as an attorney in that situation. It's not statutorily allowed. Only the state's attorneys are allowed to do that. The statute which is cited provides that she's an executive. She is in the same judiciary section of the Illinois Constitution where the state's attorney's office is identified. Under Nelson, which is an Illinois Supreme Court case, Nelson v. Kendall County, the state's attorney has been found to be an executive officer. And so I would say that would be in the same way that Dorothy Brown as clerk of the circuit court under that same statutory provision would also be included to be an executive functioning officer. Okay. Well, thank you. Thank you. Next case, George.